# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| **William Tate,** *et al.* | ) |
|     **Plaintiffs,** | )   3:14-cv-0242 JWS |
|     vs. | )   **ORDER AND OPINION** |
| **United States of America,** *et al.* | )   [Re: Motion at docket 52] |
|     **Defendants.** | ) |

## I. MOTION PRESENTED

At docket 52 plaintiffs William Tate, *et al*. ("Plaintiffs") move for an order compelling discovery pursuant to Federal Rule of Civil Procedure ("Rule") 37(a). Plaintiffs' motion is supported by a memorandum at docket 53 and an affidavit of counsel at docket 54. Defendant United States of America ("United States") opposes Plaintiffs' motion at dockets 62 and 63. Plaintiffs reply at docket 64. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

In this medical malpractice action, Plaintiffs allege that Defendants' negligence in 2013 caused Cynthia Tate to suffer irreversible brain damage. As a result, Ms. Tate is

in a permanent quasi-vegetative state. Plaintiffs and the United States have each retained experts to testify regarding Ms. Tate's life-expectancy.

The United States' expert, Robert Shavelle, Ph.D, issued two reports providing his opinion of Ms. Tate's life expectancy.[1] Dr. Shavelle states that in reaching his opinions he considered "(a) the materials [he] reviewed about Ms. Tate, (b) a large body of medical literature, (c) standard scientific methods, and (d) [his] education, training, experience, and expertise."[2] The literature he considered includes 43 medical research articles written by various authors, 16 of which were co-authored by Dr. Shavelle himself.[3] The United States has provided Plaintiffs with a copy of each of these 43 articles.

Plaintiffs are requesting the production of all raw data that was used to generate the articles upon which Dr. Shavelle relied.[4] The United States asserts that Dr. Shavelle is not in possession of any such data.

### III. STANDARD OF REVIEW

If a party fails to make a disclosure or cooperate in discovery, the requesting party may move to compel.[5] "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."[6] The trial court exercises broad discretion when deciding to permit or deny discovery.[7]

---

[1] Doc. 62-3 at 3.

[2] *Id.*

[3] Doc. 62-3 at 5-6; doc. 62-4 at 4.

[4] Doc. 54-1 at 4.

[5] Fed. R. Civ. P. 37(a)(1).

[6] *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

[7] *See Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir.1996).

## IV. DISCUSSION

Rule 26(a)(2)(B)(ii) requires a party to disclose the facts or data considered by its testifying experts in forming all opinions the witnesses will express. The question presented here is whether this obligation is broad enough to require disclosure of the raw data that an expert considered when the expert wrote academic research articles on the same topic he now seeks to testify about. Based on the plain language of Rule 26(a)(2)(B), the answer is: it depends on whether the expert considered the raw data in forming his opinions to be expressed.

When Rule 26(a)(2)(B) was amended in 2010, the Advisory Committee noted that the "facts or data" that must be disclosed should "be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert."[8]

In his declaration, Dr. Shavelle states that he did not consider any raw data in forming his opinions on Ms. Tate's life expectancy.[9] An "expert's assertion that he did not consider certain materials when forming his opinion does not control."[10] Instead, courts look to objective evidence regarding whether the witness considered his prior experiences in forming his opinions in the case at hand.[11]

Plaintiffs are correct that if Dr. Shavelle considered raw data in forming his opinions, he would have to disclose those data to Plaintiffs. The problem with Plaintiffs' motion, however, is that they have not shown that Dr. Shavelle did so. Plaintiffs focus

---

[8] Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment.

[9] Doc. 62-1 at 2 ¶ 11.

[10] *United States v. Dish Network, L.L.C.*, 297 F.R.D. 589, 595 (C.D. Ill. 2013).

[11] *See In re Mirena IUD Prod. Liab. Litig.*, No. 13-CV-6586 (CS), 2016 WL 890251, at *49 (S.D.N.Y. Mar. 8, 2016).

on the fact that Dr. Shavelle presumably relied on raw data when authoring and co-authoring his articles.[12]  That is not the same as relying on raw data when forming his opinions in this case.  Plaintiffs have not shown that, in forming his opinions to be expressed here, Dr. Shavelle either reviewed any of the raw data upon which his articles rely or considered any such data from memory.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's motion at docket 52 is **DENIED**.

DATED this 21st day of September 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[12]See doc. 64 at 3-4.