# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

William Tate, *et al.*,  )
      Plaintiffs,  )    3:14-cv-0242 JWS
      vs.  )    **ORDER AND OPINION**
United States of America, *et al.*,  )    [Re: Motion at docket 66]
      Defendants.  )

## I. MOTION PRESENTED

At docket 66 plaintiffs William Tate, *et al*. ("Plaintiffs") move for an order compelling answers to certain deposition questions pursuant to Federal Rule of Civil Procedure ("Rule") 37(a). Plaintiffs' motion is supported by a memorandum at docket 67 and an affidavit of counsel at docket 75. Defendant United States of America ("United States") opposes Plaintiffs' motion at docket 82. Plaintiffs reply at docket 85. Oral argument was not requested but would not assist the court.

## II. BACKGROUND

The factual background of this case is set out in the court's order at docket 65 and need not be repeated here. Suffice it to say for present purposes that the United States' expert, Robert Shavelle, Pd.D. ("Shavelle"), refused to answer numerous

questions at his deposition. Plaintiffs now move for an order compelling him to answer these questions.

### III. STANDARD OF REVIEW

If a deponent refuses to answer questions at her deposition, the interrogating party may move under Rule 37(a) for an order compelling discovery. The deponent has the burden to clarify, explain, and support her objections, and the ultimate burden of showing that she should not be compelled to answer the disputed questions.[1] The trial court exercises broad discretion when deciding to permit or deny discovery.[2]

### IV. DISCUSSION

**A. Annual Income**

Shavelle refused to provide the income that he or his company, Strauss & Shavelle, Inc., earns annually from litigation work, stating that he already produced sufficient information about the income he and his company has earned in this case and that providing the company's actual income was prohibited by a confidentiality agreement and by company policy.[3] Shavelle did testify, however, that all of his earned income was from his company and "roughly 90 percent of the revenue to the company is from consulting in a litigation setting."[4]

Plaintiffs seek an order compelling Shavelle to provide his and his company's annual income from litigation work, arguing that this discovery is appropriate because it

---

[1] *See DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002); 8A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2116 (3d ed. 1998) ("Although there is . . . a substantial preference for requiring that deponents apply to the court for protection rather than simply refusing to answer questions, it is to be hoped that the courts will take a realistic view of the conduct of depositions rather than foreclose deponents' objections in response to motions to compel answers.").

[2] *See Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir.1996).

[3] Doc. 66-1 at 5 p.28:21–24, 29:8–12.

[4] *Id.* at 6 p.31:18–21.

can show "positional bias."[5] Courts are split as to whether this type of discovery should be allowed. Plaintiffs cite a number of state-law cases that hold that a party should be allowed to inquire into whether an expert is biased because he earns a significant amount of income from testifying in court, and thus is a "professional witness."[6] Numerous federal courts, however, have held that the expert's bias can be adequately revealed by requiring the expert to disclose the proportion of his income that is derived from litigation activities.[7] These courts recognize that the amount of an expert's litigation income is relevant to the jury's bias analysis, but the value of that evidence is slight when the expert has already disclosed the proportion of his income that comes from litigation, and is typically outweighed by the potential harms from allowing the discovery—namely, confusing and distracting the jury and burdening the expert.[8]

The court finds the latter line of authority more persuasive in the context of the case at hand. If Plaintiffs wish to portray Shavelle as a biased professional witness because he derives a significant amount of his income from litigation fees, they have sufficient information with which do so. Shavelle testified that nearly all of his company's income comes from litigation, and he earns all of his income from his company. Knowing the overall amount of Shavelle's litigation income would not

---

[5] Doc. 67 at 9.

[6] *See, e.g., Wrobleski v. de Lara*, 727 A.2d 930, 938 (Md. 1999) ("[I]t is generally appropriate for a party to inquire whether a witness offered as an expert in a particular field earns a significant portion or amount of income from applying that expertise in a forensic setting and is thus in the nature of a 'professional witness.'"); *Primm v. Isaac*, 127 S.W.3d 630, 637 (Ky. 2004) (same); *Cooper v. Schoffstall*, 905 A.2d 482, 494–95 (Pa. 2006) (same).

[7] *See Behler v. Hanlon*, 199 F.R.D. 553, 562 (D. Md. 2001) ("[T]he jury readily should be able to assess possible bias on the part of an expert witness if they are made aware of the total percentage of his or her gross income that is earned from providing expert witness services."); *Rogers v. U.S. Navy*, 223 F.R.D. 533, 535 (S.D. Cal. 2004) (same); *Brzezinski v. Allstate Ins. Co.*, No. 11-CV-2373-CAB (DHB), 2012 WL 12869522, at *8 (S.D. Cal. Aug. 28, 2012) (same); *Olson v. State Farm Fire & Cas. Co.*, No. C14-0786RSM, 2015 WL 753501, at *3 (W.D. Wash. Feb. 23, 2015) (same).

[8] *See, e.g., Behler*, 199 F.R.D. at 562.

significantly assist the jury's evaluation of Shavelle's bias. The slight probative value of this evidence is outweighed by the potential for confusing or distracting the jury and burdening Shavelle.[9] Plaintiffs' request will be denied.

**B.    Date of Birth and Residence**

Citing privacy concerns, Shavelle refused to provide his date of birth,[10] where he lives, whether he lives within 200 miles of his office in San Francisco,[11] or whether anyone lives in his office.[12] Plaintiffs argue that Shavelle's date of birth is relevant because having that information would make it easier for their investigators to conduct background research on him. The United States responds that Shavelle's date of birth is irrelevant because "no institution or organization or former employer is going to release personal information . . . to an attorney or his investigators just because they have a person's date of birth. Discovery for this type of sensitive information requires signed releases/authorizations, subpoenas, and records depositions."[13] Because the record is devoid of any evidence showing that a competent investigator would be impeded by a lack of the birth date, the United States' relevancy argument is persuasive. Plaintiffs' request will be denied.

With regard to the remaining information, Plaintiffs argue that if they can show that Shavelle works out of his home and not in his company's San Francisco office, this will somehow discredit Shavelle. The court agrees with the United States that the facts

---

[9] Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*.) (emphasis added).

[10] Doc. 66-1 at 6 p.33:3–4, 34:9–11.

[11] *Id.* at 7–8 pp.37:6–39:21.

[12] *Id.* at 8 p.40:9–13.

[13] Doc. 82 at 15.

-4-

Plaintiffs seek are irrelevant to the validity of Shavelle's opinions in this case. Plaintiffs' request will be denied.

**C.    Raw Data**

At docket 52 Plaintiffs filed a motion to compel the United States to produce the raw data upon which Shavelle based his research articles. The court denied the motion because Plaintiffs had not shown that Shavelle considered that data in forming his opinions in this case.[14] At his deposition, Shavelle confirmed that he did not consider any raw data.[15] Yet, Plaintiffs persist in their efforts to discover the data. They now challenge Shavelle's refusal to state whether he retained or is able to access the data upon which his medical research articles rely,[16] the type of computers he has now or has had in the past, or how he deletes data from his computers.[17]

The arguments that Plaintiffs advance in support of their current motion are essentially the same arguments the court rejected at docket 65. The court rejects them again.

**D.    The Names of Shavelle's Four Other Assistants**

Shavelle refused to provide the names of four research and consulting assistants who work for his company, but did not work on this case, stating that he was "not sure it would be appropriate . . . to put their full names on what is a public record."[18] He did, however, provide the names of the two research assistants who may have worked on

---

[14] Doc. 65.

[15] *See* doc. 66-1 at 10 ("[I]n arriving at my opinions in this case, regarding Ms. Tate's life expectancy, I did not rely on any database, data set, or data.").

[16] *See, e.g. id.* at 10 p.56:4–11, 15 p.75:14–23.

[17] *Id.* at 13 p.66:5–25.

[18] *Id.* at 4 p.23:14–24. *See also* Shavelle's declaration, doc. 82-1 at 2 ¶ 10 ("These other assistants had no involvement with any aspect of my work in this case and I was trying to respect their privacy.").

this case.[19] Plaintiffs move to compel Shavelle to name the four others so that Plaintiffs can contact them to "cross-check and verify factual claims" Shavelle made in his deposition. Plaintiffs state that this investigation might lead to answers to the following questions:

> What really goes on at the townhouse? Is someone using that address as a residence? If so, who? Where does Shavelle reside? How often does he come to San Francisco? How many employees does Strauss & Shavelle really have? What data remains on the computers at Strauss & Shavelle and The Life Expectancy Project? Were data or datasets deleted from the firms' computers? By whom? When? For what purpose? Can the erased data be retrieved? What obstacles would there be to a forensic recovery of erased data?

The United States objects, stating that this "theoretical future discovery 'rings hollow'" because Plaintiffs made no attempt before the close of discovery to contact the two assistants who actually worked on this case.[20]

The names of Shavelle's four assistants are irrelevant to this case. All of the questions that Plaintiffs want to ask these individuals seek irrelevant information. Further, the court agrees with the United States that Plaintiffs could have asked the questions to the assistants whom Shavelle did identify, but they chose not to. This shows that not even Plaintiffs themselves believe that the sought-after information is relevant or important to resolving the issues in this case. Plaintiffs' request will be denied.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion at docket 66 is **DENIED**.

DATED this 5th day of December 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[19]Doc. 66-1 at 4 p.24:2–5.

[20]Doc. 82 at 10.